# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| David A. Moe, | ) |
|        Plaintiff, | ) |
| vs. | ) Case No: 3:13-cv-30 |
| Leann K. Bertsch, Director North Dakota Department of Corrections and Rehabilitation, and Robyn Schmalenberger, Warden, North Dakota State Penitentiary, | ) **REPORT AND RECOMMENDATION** |
|        Defendants. | ) |

Plaintiff David A. Moe ("Moe"), an inmate at the James River Correctional Center, filed a complaint pursuant to 42 U.S.C. § 1983. (Doc. #7). Moe alleges he was assessed a restitution obligation in violation of his due process rights because he was not afforded a hearing. Id. Moe's claim against the defendants in their official capacities was dismissed upon initial review of the complaint under 28 U.S.C. § 1915A, and the court ordered service as to the defendants in their individual capacities. (See Order, Doc. #9). The defendants have filed a motion for summary judgment asserting they are entitled to qualified immunity. (Doc. #32, Doc. #33).

**Summary of Recommendation**

Moe has not established his due process rights were violated and the defendants are entitled to qualified immunity. It is **RECOMMENDED** that defendants' motion for summary judgment (Doc. #32) be **GRANTED**, and Moe's complaint (Doc. #7) be **DISMISSED** with prejudice.

**Summary Judgment Standard**

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex, 477 U.S. at 322. The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden to go beyond the pleadings and show a genuine triable issue of fact. Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992). The court views the facts in the light most favorable to the nonmoving party, who enjoys "the benefit of all reasonable inferences to be drawn from the facts." Vacca v. Viacom Broadcasting of Missouri, Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (citation omitted).

**Qualified Immunity Standard**

Qualified immunity shields government officials from liability unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To defeat a claim of qualified immunity, a plaintiff must present sufficient facts to show both that the official's conduct violated a constitutional right, and the constitutional right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001).

**Facts**

Moe's work assignment while incarcerated at the North Dakota State Penitentiary in August of 2010 was at Rough Rider Industries on the furniture floor. (Moe Aff., Doc. #35-1, p. 1). Moe was responsible for operating an edgebander machine, which is utilized to attach veneer

2

edging on woodworking projects. (Moe Aff., Doc. #35-1, p. 1; Krein Aff. Doc. #33-1, p. 1). On August 3, 2010, Moe hit the glass controller screen on the edgebander machine, causing the screen to break, which he claims was unintentional. (Complaint, Doc. #7, pp. 6-7; Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23; Disciplinary Report, Doc. #33-2, p. 26; Findings, Doc. #33-2, p. 48 and Doc. #35-9; Moe Aff. Doc. #35-1, pp. 1-2).

The manager of the furniture floor, Lloyd Krein ("Krein"), states that after Moe broke the screen Moe assisted Krein in getting the serial numbers from the edgebander machine and the controller screen. (Krein Aff., Doc. #33-1, p. 2). Krein contends that after conducting an Internet search he determined no company would replace only the screen, and he then contacted the manufacturer and was informed that the screen had to be purchased with the computer module. Id.

Krein conducted an investigation and completed an Incident Report. (Krein Aff., Doc. #33-1, p.3; Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23). The Incident Report charged Moe with "[d]estruction, alteration or misuse of state/personal property." (Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23). The Incident Report notes that Krein and Moe contacted the manufacturer and were informed that the screen and computer module had to be purchased as a unit, and the replacement cost for the unit would be $3740.00; it would cost $250.00 to program the module, and that shipping would cost extra. Id. Krein attached a letter to the Incident Report requesting "restitution in the amount of total damages including programming and shipping costs." (Letter, Doc. #33-1, p. 7; Krein Aff., Doc. #33-1, p. 3).

On August 11, 2010, Moe was given the Incident Report, a Notice of Disciplinary Hearing form, and the Inmate Rights and Responsibilities When Before Adjustment Committee

form. (Complaint, Doc. #7, p. 6; Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23; Notice of Hearing, Doc. #33-2, p. 27 and Doc. #35-2; Inmate Rights and Responsibilities, Doc. #3-2, p. 28). The hearing was scheduled for August 16, 2010, Moe did not request staff representation at the hearing, and he did not request any witnesses appear at the hearing on his behalf.[1] (Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23; Notice of Hearing, Doc. #33-2, p. 27 and Doc. #35-2). The bottom of the Notice of Disciplinary Hearing form, which Moe signed, contains the following language:

> If the Disciplinary Committee finds you guilty of the above charges, it may also include as part of any sanction it imposes loss of wages, fines, or restitution. The Warden may withdraw funds from your Penitentiary account without your signature for payment of any such sanctions. This is your notification that an administrative hearing will be held at the same time and place for the purpose of determining whether funds may be withdrawn from your inmate accounts for payment of sanctions.

(Notice of Hearing; Doc. #33-2, p. 27 and Doc. #35-2).

On August 13, 2010, Moe signed a Waiver of Hearing and Plea of Guilty form. (Waiver, Doc. #33-2, p. 29). Moe acknowledged he was guilty of the offense and indicated he would be willing to accept a $400 fine, he would train someone to use the edgebander machine, and he would give up his afternoon recreation time until he found employment. Id. Moe's caseworker signed the form, but the plea agreement was not approved by the Deputy Warden. Id.

Moe was provided a hearing and admitted his guilt, but he contends he was not given an opportunity to contest the replacement amount listed in the Incident Report. (Complaint, Doc. #7, p. 9). Moe states the edgebander machine had problems and was defective before Moe broke

---

[1] Inmates can request staff representation and that witnesses appear at the hearing. (See Policies and Procedures Manual, Doc. #33-2, pp. 14-16).

4

the screen, and if he had a restitution hearing Moe would have presented evidence that other companies would have replaced only the screen and the restitution amount ordered should have been much lower. (Complaint, Doc. #7, pp. 7-9). Steve Foster, who was the Deputy Warden during the relevant time period and was the Chairman of the Disciplinary Committee which held the hearing, states that Moe testified at the hearing and admitted he accidentally hit the screen, but Moe never contested the estimated replacement amount indicated in the Incident Report. (Foster Aff., Doc. #33-2, p. 5).

The Disciplinary Committee found Moe guilty of "destruction, alteration or misuse of state/personal property" and noted that Moe admitted he hit the machine, and even if it was by accident, the equipment needed to be replaced. (Findings, Doc. #33-2, p. 48). The Disciplinary Committee recommended to the warden that Moe be required to pay $4200.00 to replace and reprogram the edgebander machine, that $1200.00 of the total be paid from his release aid account and that the remainder be paid from his spending account, and that Moe lose his preferred housing and his job. Id. The warden, defendant Robyn Schmalenberger ("Schmalenberger"), approved the recommendation. Id.

Moe appealed the decision to Warden Schmalenberger. (Appeal, Doc. #33-2, pp. 49-51). Moe contended that the restitution amount was excessive, the edgebander did not work properly before Moe broke the screen, and after Moe broke the screen he was still able to operate the machine. Id. Moe noted he should have only been charged to replace the screen, which Moe estimated to be $1700.00, and that he did not willfully damage the screen. Id. Warden Schmalenberger upheld the finding of guilt and the sanctions imposed, with the exception of reducing the restitution amount to $4190.00, which Schmalenberger said was the actual cost of replacing and programming the machine. Id.

Moe filed a second appeal to defendant Leann Bertsch ("Bertsch"), the Department of Corrections Director. (Appeal, Doc. #33-2, pp. 52-54). Moe raised the same issues he had in his appeal to Warden Schmalenberger. Id. Director Bertsch upheld the decision. (Doc. #33-2, p. 55).

Moe states that over $3000.00 of the money taken to satisfy the restitution amount ordered was received from outside sources.[2] (Moe Aff., Doc. #35-1, p. 2). Also, the actual cost of replacing and programming the edgebander was $4053.95. (Invoices, Doc. #35-4, Doc. #35-6, and Doc. #35-7). On July 19, 2014, the Department of Corrections reimbursed Moe $146.05, the amount above the actual cost of the repair that was taken from Moe's account. (Doc. #35-8).

**Law and Discussion**

Inmates have a property interest in money received from outside sources and are entitled to due process before they can be deprived of that money. Mahers v. Halford, 76 F.3d 951, 954 (8th Cir. 1996) (citations omitted). In determining what process is due the court must balance three factors: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedures; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). "In most cases, some type of predeprivation notice and hearing are constitutionally required before a

---

[2] "The warden, with the approval of the director of the department of corrections and rehabilitation, shall institute and maintain a uniform system of fines and restitution for violation of department rules and when an offender causes personal injury or property damage." N.D. Cent. Code § 12-48-22. "The warden may deduct the fine or restitution from *any* funds credited to an offender's penitentiary account or Bank of North Dakota two-signature account." Id. (emphasis added).

property interest is invaded, but in some situations meaningful postdeprivation remedies are constitutionally sufficient."[3] Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998) (citations omitted).

Moe has an interest in the funds he received from outside sources, but he is not entitled to complete control over the money while he is incarcerated. See Mahers, 76 F.3d at 954 (citing Foster v. Hughs, 979 F.2d 130 (8th Cir. 1992) (prisoners do not have a constitutional right to place money in an interest-bearing account); Blakenship v. Gunter, 898 F.2d 625 (8th Cir. 1990) (inmates can be prohibited from using their money for religious donations)). Additionally, Moe is "not absolutely deprived of the benefit of [his] money when part of it is applied toward [his] restitution debts." Id. at 954-955.

The procedures used in this case limited the risk of erroneous deprivation. Moe was given the Incident Report, and the Notice of Disciplinary Hearing and Inmate's Rights and Responsibilities forms five days before the hearing. (See Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23; Notice of Hearing, Doc. #33-2, p. 27 and Doc. #35-2; Inmate Rights and Responsibilities, Doc. #3-2, p. 28). Moe was notified that the restitution hearing would take place at the same time. (Notice of Hearing; Doc. #33-2, p. 27 and Doc. #35-2). Moe was given an opportunity to have staff representation and to call witnesses, but he declined. (Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23; Notice of Hearing, Doc. #33-2 p. 27 and Doc. #35-2). Moe testified at the hearing, was given a written decision, filed two appeals, and was

---

[3] North Dakota law provides that before funds can be withdrawn to pay an administratively ordered restitution debt, "the inmate the must first receive written notice and be provided a penitentiary administrative hearing with the right to appeal according to department of corrections and rehabilitation rules." N.D. Cent. Code § 12-48-15(4).

given written decisions denying his appeals. (Foster Aff., Doc. #33-2, p. 5; Findings, Doc. #33-2, p. 48; Appeal, Doc. #33-2, pp. 49-51; Appeal, Doc. #33-2, pp. 52-55). Under these circumstances, Moe received adequate procedural protections.

Moe contends the Notice of Disciplinary Hearing form was inadequate because it does not recite the replacement amount for the edgebander machine, and therefore Moe could not prepare a defense. (Brief, Doc. #35, p. 4). However, Moe was given the Incident Report with the Notice of Disciplinary Hearing so he was aware of the amount Rough Rider Industries was seeking to recoup. The Incident Report notes that Krein and Moe contacted the manufacturer and were informed that the screen and computer module had to be purchased as a unit, and the replacement cost for the unit would be $3740.00, it would cost $250.00 to program the module, and that shipping would cost extra. (Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23). Moe was also notified that Rough Rider Industries had requested restitution. (Letter, Doc. #33-1, p. 7; Krein Aff., Doc. #33-1, p. 3). Moe could have contested the amount at the hearing when he testified.

Moe also contends he should have received "pictures, papers, [or] documents" which showed the actual cost of the edgebander, that no facts were presented to show the screen could not be purchased separately from the computer module, and there were no "papers, documents, purchase orders or check stubs" evidencing what Rough Rider Industries paid to replace the equipment. (Brief, Doc. #35, p. 4). Moe fails to recognize he received the Incident Report five days before the hearing which states the manufacturer advised Krein that the screen could not be purchased separately, and the report listed the estimated price. (Incident Report, Doc. #33-1, p. 6 and Doc. #32-2, p. 23). Accordingly, there was some evidence supporting the committee's

8

determination as to how much restitution was owed by Moe. See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (due process requirements are satisfied if the decision is supported by "some evidence").

Moe states that had he been provided a restitution hearing, he would have shown he "only damaged a small screen," and the amount of restitution ordered was incorrect. (Brief, Doc., # 35, pp. 4-5). It is not contested that only the screen was damaged by Moe, and while the amount charged to plaintiff was incorrect, the committee's decision was based on an estimate, and Moe was recently reimbursed the amount he overpaid.[4] Additionally, Moe states in his complaint he would have presented evidence that a "less expensive method of repair was available," but Moe also admits he did not discover the information until "later." (Complaint, Doc. #7, pp. 8-9). Therefore, Moe would not have had that information available at the hearing, and even if he did, nothing prevented Moe from presenting the information during his testimony or through submission of documentary evidence.[5]

Finally, Moe contends the Disciplinary Committee's typed findings were produced prior to the hearing. However, there is no evidence to support Moe's claim, and conclusory allegations and speculation cannot defeat summary judgment. See Bloom v. Metro Heart Grp. of St. Louis, Inc., 440 F.3d 1025, 1028–29 (8th Cir.2006). Additionally, the court notes the findings state that Moe admitted to the committee he hit the machine, which admission occurred during the

---

[4] While the amount overcharged perhaps should have been discovered and reimbursed to Moe long before he filed the present lawsuit, it does not follow that he was denied due process because of the oversight.

[5] An inmate may produce documentary evidence at the hearing. (See Policies and Procedures Manual, Doc. #33-2, p. 14).

hearing, making it unlikely that the document was produced prior to the hearing. (See Doc. #35-9).

With regard to the third factor, the government's interest, the state clearly has an interest in teaching inmates responsibility for their behavior and in maintaining control over its penal institutions. See Parrish v. Mallinger, 133 F.3d 612, 615 (8th Cir. 1998). Moe received adequate procedural protections and the court will not second guess the findings of the Disciplinary Committee.

## Conclusion

Moe has not established he was assessed a restitution obligation in violation of his due process rights. Moe has not presented sufficient facts to show the defendants' conduct violated a constitutional right, and therefore defendants are entitled to qualified immunity. Accordingly, it is **RECOMMENDED** that:

1. Defendants' motion for summary judgment (Doc. #32) be **GRANTED**;

2. Moe's complaint (Doc. #7) be **DISMISSED** with prejudice; and

3. The court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 4th day of December, 2014.

                               /s/ *Karen K. Klein*
                               Karen K. Klein
                               United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT

Pursuant to Rule 72(a) and (b), Federal Rules of Civil Procedure, and District of North Dakota Local Court Civil Rule 72.1(D)(2) and (3), any party may object to this Report and

Recommendation and by filing with the Clerk of Court no later than December 19, 2014, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.